**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**ALIYA HAIDER,**

                **Plaintiff,**        20-cv-2752 (JGK)

      - against -                **OPINION AND ORDER**

**GELLER & COMPANY LLC, ET AL.,**

                **Defendants.**
------------------------------------

**JOHN G. KOELTL, District Judge:**

    In this employment discrimination case, the plaintiff, the former Acting General Counsel of the defendants Geller & Company LLC and Geller Advisors (collectively, "Geller"), filed the complaint under seal so that issues with respect to confidentiality and redaction could be resolved before the complaint was filed publicly. The parties cooperated in attempting to work out what portions of the complaint should be redacted in order to protect any privileged communications. The parties agreed that the majority of the complaint could be filed not under seal and that certain portions of the complaint could be redacted because they referred to communications that appeared to be protected by the attorney-client privilege. The parties disagree over a small number of items that the plaintiff contends should be filed publicly and that Geller contends should be redacted from the publicly filed complaint because the subject items were covered by the attorney-client privilege or

1

contain confidential information that the plaintiff, as an attorney, is required to avoid disclosing publicly.

The Court has carefully reviewed the proposed redactions and concludes the additional redactions sought by Geller are unwarranted except for the proposed redaction to paragraph 1, which should be made. Unlike the other redactions proposed by Geller, the proposed redaction to paragraph 1 appears to redact a statement covered by the attorney-client privilege. Therefore, Geller's proposed redactions to paragraphs 4, 6, 38, 40, 44, 48, and 50-51 should not be made. Those redactions do not infringe on the attorney-client privilege and, to the extent that there is any confidential information in those paragraphs, the need for confidentiality does not overcome the presumption of openness for judicial documents.

### A.

There is a presumption of public access to judicial documents under both the common law and the First Amendment. Nixon v. Warner Commc'ns, 435 U.S. 589, 597-98 (1978) (common-law right of access to judicial documents); Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 3 (1986) (First Amendment right of access to preliminary hearings). The Court of Appeals for the Second Circuit has recognized both of these rights with respect

to judicial documents. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006).

A court must undertake a three-part inquiry to determine whether there is a common-law right of access to a document submitted to the court. First, a court must determine whether the document is a "judicial document," such that a presumption of access attaches. Second, if the document is indeed a "judicial document," the court must determine the weight to be accorded the presumption of access. Finally, after determining the weight of the presumption of access, the court must balance any countervailing factors against the presumption, including the privacy interests of those resisting disclosure. See United States v. Amodeo, 71 F.3d 1044, 1050-51 (2d Cir. 1995); United States v. Sattar, 471 F. Supp. 2d 380, 384 (S.D.N.Y. 2006); see also Cooksey v. Digital, No. 14-CV-7146, 2016 WL 316853, at *2 (S.D.N.Y. Jan. 26, 2016).

The presumption of access under the First Amendment also attaches under the "experience and logic" test, which requires a court to consider both "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." Lugosch, 435 F.3d at 120

(internal quotation marks and citation omitted).[1] This presumption may be overcome if redactions are necessary to preserve higher values and are narrowly tailored to protect those values. See id.; see also Bernstein, 814 F.3d at 144.

It is plain that a complaint is a judicial document to which the presumption of access attaches. See Bernstein, 814 F.3d at 139 ("We first consider whether a complaint is a judicial document subject to a presumption of access and easily conclude that a complaint is such a document."). Under the common law analysis, the weight of that presumption is strong because the complaint is "highly relevant to the exercise of Article III judicial power" and the complaint "invokes the powers of the court, states the causes of action, and prays for relief." Id. at 142; Cooksey, 2016 WL 316853, at *2. Under the First Amendment analysis, complaints have historically been publicly accessible by default and such access allows the public to "understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern." Bernstein, 814 F.3d at 141.

---

[1] The Court of Appeals for the Second Circuit has also articulated a second approach to determine whether the presumption of access exists under the First Amendment. This second approach "considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 141 (2d Cir. 2016) (citation omitted). A complaint is best evaluated under the experience and logic approach. See id.

(internal quotation marks and citation omitted).[1] This presumption may be overcome if redactions are necessary to preserve higher values and are narrowly tailored to protect those values. See id.; see also Bernstein, 814 F.3d at 144.

It is plain that a complaint is a judicial document to which the presumption of access attaches. See Bernstein, 814 F.3d at 139 ("We first consider whether a complaint is a judicial document subject to a presumption of access and easily conclude that a complaint is such a document."). Under the common law analysis, the weight of that presumption is strong because the complaint is "highly relevant to the exercise of Article III judicial power" and the complaint "invokes the powers of the court, states the causes of action, and prays for relief." Id. at 142; Cooksey, 2016 WL 316853, at *2. Under the First Amendment analysis, complaints have historically been publicly accessible by default and such access allows the public to "understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern." Bernstein, 814 F.3d at 141.

---

[1] The Court of Appeals for the Second Circuit has also articulated a second approach to determine whether the presumption of access exists under the First Amendment. This second approach "considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 141 (2d Cir. 2016) (citation omitted). A complaint is best evaluated under the experience and logic approach. See id.

**B.**

Notwithstanding the presumption of access, portions of the complaint may be kept under seal "if countervailing factors in the common law framework or higher values in the First Amendment framework so demand." Lugosch, 435 F.3d at 124 (internal quotation marks omitted).

**1.**

The need to protect attorney-client privileged communications may defeat the presumption. See Diversified Grp., Inc. v. Daugerdas, 217 F.R.D. 152, 160 (S.D.N.Y. 2003) ("[P]reserving the confidentiality of attorney-client communications . . . is precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records.") (internal quotation marks and citation omitted); Lugosch, 435 F.3d at 125("[A]ttorney-client privilege might well be such a compelling reason."). The attorney-client privilege attaches to (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011) (citing In re Cty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007)).

The disputed redactions, with the exception of the redaction in paragraph 1, involve discriminatory comments made

to the plaintiff, the plaintiff's allegations about her own efforts to protest those comments, and the plaintiff's allegations about the discriminatory actions taken against her. None of those allegations could reasonably be interpreted as efforts to communicate with the plaintiff in order to obtain legal advice from the plaintiff in her role as Acting General Counsel. Geller claims that other allegations in the complaint, which the plaintiff agreed to redact, support Geller's additional proposed redactions. However, those allegations plainly relate to complaints by other employees about their treatment and that arguably were communicated to the plaintiff in her role as Acting General Counsel in an effort to obtain legal advice. The plaintiff's careful agreement to redact what are arguably attorney-client communications should not be used as a shield to protect communications that are plainly not privileged. The allegedly discriminatory remarks that Geller wishes to redact were not directed to the plaintiff for an opinion as to whether they were discriminatory or to seek her advice as to what to do about them.

### 2.

Geller also argues that the proposed redactions are justified because they include material that would be embarrassing to Geller, the former client of the plaintiff, and

are thus "confidential." Under the New York Rules of Professional Conduct (hereinafter "N.Y. Rules"), confidential information is defined as "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential." N.Y. Rules § 1.6.

Although N.Y. Rules § 1.6 does not explicitly address whether confidential information may be disclosed when the lawyer has a civil rights claim against a former client, courts in the Second Circuit have noted that allegations related to discrimination suffered by an attorney generally do not involve client confidences. See Fischman v. Mitsubishi Chem. Holdings Am., Inc., No. 18-CV-8188, 2019 WL 3034866, at *5 (S.D.N.Y. July 11, 2019) ("[A]llegations regarding general comments made about sexism within the company (rather than regarding action taken relating to official complaints) do not come from, or relate to, [an attorney's] legal work and thus are not protected client information."); Schaefer v. Gen. Elec. Co., No. 307-CV-0858PCD, 2008 WL 649189, at *5 (D. Conn. Jan. 22, 2008) (attorney's reliance in part on personal experience as a female employee and anecdotal testimony that the company was biased against female employees to bring disparate impact gender discrimination claim

7

would not reveal confidential information). The statements that Geller wishes to redact, outside of the proposed redaction to paragraph 1, contain only allegations of discriminatory conduct that the plaintiff herself experienced at the hands of Geller administrators and personnel. The statements do not relate to the plaintiff's legal work and thus differ significantly from the disclosures at issue in the cases cited by Geller, in which suits brought by in-house counsel against clients were dismissed because counsel revealed information about the company's internal operations and legal advice. See e.g., Wise v. Consol. Edison Co. of New York, 723 N.Y.S.2d 462, 463 (App. Div. 2001) (disclosure of specific corporate tax strategies); Eckhaus v. Alfa-Laval, Inc., 764 F. Supp. 34, 37 (S.D.N.Y. 1991) (disclosure of internal memo discussing strategy and of allegations of document destruction); Johnson v. Medisys Health Network, No. 10-CV-1596, 2011 WL 5222917, at *24 (E.D.N.Y. June 1, 2011), report and recommendation adopted as modified, No. CV-10-1596, 2011 WL 4101323 (E.D.N.Y. Sept. 8, 2011) (disclosure of plaintiff's legal advice to client).

Regardless of whether the allegedly discriminatory remarks directed at the plaintiff when she served as Acting General Counsel are considered confidential information under N.Y. Rules

§ 1.6,[2] the Court of Appeals for the Second Circuit has expressed doubt that the "broader ethical duty to maintain client confidences should be treated identically to . . . the narrower and more venerable attorney-client privilege" such that the duty to maintain client confidences overrides the presumption of access to judicial documents. See Bernstein, 814 F.3d at 145. Accordingly, the duty of confidentiality also does not justify any of Geller's proposed redactions in paragraphs 4, 6, 38, 40, 44, 48, and 50-51.

---

[2] It is doubtful that the proposed redactions in this case are confidential information simply because the plaintiff experienced the alleged discrimination during her employment and because it would be embarrassing to the client if allegations of the client's own discriminatory actions against its counsel were revealed. Moreover, N.Y. Rules § 1.6(b)(5) allows attorneys to disclose confidential information in limited circumstances such as collecting a fee or defending against misconduct charges. The disclosure of such information to pursue a claim of discrimination against a former client is a compelling interest, certainly equal in weight to other N.Y. Rules § 1.6 exceptions, such as collecting a fee. Allowing a disclosure in these limited circumstances is also in line with the broader scope of Rule 1.6(b)(5) of the ABA Model Rules of Professional Conduct, which allows a lawyer to reveal or use confidential information "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client[.]" Reliance "on the ABA Model Rules of Professional Conduct (on which the New York Rules were modeled). . . is also proper, as [this source] frequently inform[s] courts' interpretation of the New York Rules." Fischman, 2019 WL 3034866, at *5, n.4.

Furthermore, allowing an ethical rule to shield an employer's discriminatory behavior from public view would run afoul of the public's interest in deterring workplace discrimination on the basis of race and enforcing legal and social norms. See Abdel-Razeq v. Alvarez & Marsal, Inc., No. 14-CV-5601, 2015 WL 7017431, at *7 (S.D.N.Y. Nov. 12, 2015) (strong public policy interest in enforcing anti-discrimination laws and deterring workplace discrimination) (citing cases); see also Doe v. Solera Capital LLC, No. 18-CV-1769, 2019 WL 1437520, at *2 (S.D.N.Y. Mar. 31, 2019) ("Private civil suits advance the public's interest in enforcing legal and social norms. When a lawsuit involves issues concerning a defendant's action or a particular incident . . . open proceedings serve the judiciary's interest in a fair and accurate fact-finding adjudication.") (citing Doe v. Del Rio, 241 F.R.D. 154, 159 (S.D.N.Y. 2006)).

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the complaint should be filed with the agreed redactions and, in addition, the redaction sought by Geller in paragraph 1.

**SO ORDERED.**

**Dated:     New York, New York**
**            April 28, 2020**                 ____/s/ John G. Koeltl_____
                                          **John G. Koeltl**
                                 **United States District Judge**