VLADECK, RASKIN & CLARK, P.C.

DEBRA L. RASKIN
(212) 403-7331
EMAIL: draskin@vladeck.com

20 CV 2752

April 2, 2020

*JUDGE KOELTL*

**BY HAND DELIVERY AND EMAIL**

Hon. Valerie E. Caproni
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007
CaproniNYSDChambers@nysd.uscourts.gov

U S DISTRICT COURT SDNY
RECEIVED

    Re:    Aliya Haider v. Geller & Company, LLC, et al.
             Request to File Complaint Under Seal

Dear Judge Caproni:

    We represent Aliya Haider, Esq. and write to request permission to file her Complaint against Geller & Company, LLP ("Geller & Co."), Geller Advisors LLC ("Geller Advisors"), (collectively "Geller" or the "Company"), and Berger Legal Secondment & Solutions, LLC d/b/a Bliss Lawyers ("Bliss Lawyers") under seal. Prior to making this request, we reached out to counsel for Geller and Bliss Lawyers and have obtained their consent to file under seal.

    Haider is an attorney of Pakistani descent and her complaint asserts claims of discrimination and retaliation against defendants under 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law. The complaint alleges that: (1) Haider was seconded by Bliss Lawyers to Geller & Co. on a temporary basis to serve as the Company's in-house counsel and remained in the position from July 2018 to August 2019; (2) Geller was both Haider's client and employer; and (3) Geller executives repeatedly subjected Haider to discriminatory remarks and ultimately denied her the permanent position of General Counsel because of her ethnicity and in retaliation for her opposition to discriminatory practices. These discriminatory remarks are central to Haider's claims but also are potentially embarrassing to Geller. Accordingly, Haider's allegations arguably go beyond describing a non-confidential employment decision. Cf. Johnson v. Medisys Health Network, No. 10-CV-1596 (ERK) (VVP), 2011 WL 5222917, at *25 (E.D.N.Y. June 1, 2011), report and recommendation adopted as modified, No. CV-10-1596 (ERK) (VVP), 2011 WL 4101323 (E.D.N.Y. Sept. 8, 2011) (holding that a plaintiff-attorney's allegation that she was fired reflected an employment decision, but was "not a confidence nor [was] its disclosure embarrassing or detrimental to the defendants"). As a result, in an abundance of caution and to mitigate any concern that publication of these facts would violate Haider's duty of confidentiality to her former client under the New York Rules of

Professional Responsibility ("NYRPR"). Plaintiff respectfully requests that the Court allow the complaint to remain under seal temporarily until, if and when, the issue of confidentiality is litigated.

While we are aware that the complaint may be considered a judicial document, judicial documents may be sealed based on specific findings that there is a higher interest than the presumption of access to such filings. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006). Here closure or sealing is essential to preserve those higher values and is narrowly tailored to serve that interest. See id. Certain facts alleged in the complaint might be considered confidential based on an attorney-client relationship, which is a compelling reason to seal a judicial document at least temporarily. See id. at 125.

The other higher interest that requires sealing the complaint is the public interest in ensuring that in-house counsel faced with employment discrimination have the same rights as other employees. See Gen. Dynamics Corp. v. Superior Court, 876 P.2d 487, 498 (Cal. 1994) ("in-house counsel . . . have, if anything, an *even more* powerful claim to judicial protection than their nonprofessional colleagues"). Created by the first Civil Rights Act, 42 U.S.C. § 1981 is a component of the fundamental federal policy against discrimination based on ancestry or ethnic characteristics. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 612–13 (1987). In New York State, "[t]he opportunity to obtain employment without discrimination" is a civil right of the highest priority. N.Y. Exec. § 291(1) (2019).

In a majority of states, the ethical rules explicitly allow in-house attorneys to bring claims against former employers and clients, even where such claims involve confidential information. See Heckman v. Zurich Holding Co. of Am., 242 F.R.D. 606, 608 (D. Kan. 2007) (noting that the overwhelming majority of states have permitted in-house attorneys to bring retaliatory discharge claims against their employers); Kidwell v. Sybaritic, Inc., 749 N.W.2d 855, 863–64 (Minn. Ct. App. 2008), aff'd, 784 N.W.2d 220 (Minn. 2010) (noting that the majority of states permit lawsuits by in-house counsel); see, e.g., Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 179 (3d Cir. 1997) (holding that in-house counsel may make Title VII retaliation claims); Jones v. Flagship Int'l, 793 F.2d 714, 726 (5th Cir. 1986) (holding that an in-house attorney could file an EEOC charge). A lawyer does not forfeit her right to a workplace free of discrimination simply because she becomes an in-house counsel. Jones, 793 F.2d at 726; accord Willy v. Admin. Review Bd., 423 F.3d 483, 498-99 (5th Cir. 2005); accord Heckman, 242 F.R.D. at 610.

However, under New York Rule of Professional Conduct 1.6 ("NYRPC 1.6" or "Rule 1.6"), Haider has a broad duty of confidentiality toward her former client which may be implicated by this lawsuit. See Johnson, 2011 WL 5222917, at *24. Unlike those of many other states, New York's Rules of Professional Conduct do not explicitly address the issue of client confidences when the lawyer has a civil rights claim against a former client. Compare Model Rules of Prof'l Conduct R. 1.6(b)(5) (2019) (a lawyer may reveal information necessary "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client[.]") with N.Y. Rules of Prof'l Conduct R. 1.6 (a lawyer may reveal client confidences in order to defend the

2

lawyer against an accusation of wrongful conduct or collect a fee).[1] In addition, under NYRPC 1.6(a), confidential information includes information that is "likely to be embarrassing or detrimental to the client if disclosed." N.Y. Rules of Prof'l Conduct R. 1.6(a). Haider's complaint may be embarrassing to Geller because it contains direct evidence of discrimination, which, as the Second Circuit has recognized, is extremely rare. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) ("Where an employer acted with discriminatory intent, 'direct evidence of that intent will only rarely be available'").

Nevertheless, there is significant support for the principal that under New York law, in-house counsel may disclose confidential information in order to establish a claim of discrimination or retaliation. The Association of the Bar of the City of New York has determined that an in-house counsel is not "ethically precluded from bringing an action against the former employer for claimed discrimination, since this involves a much more fundamental right, grounded in numerous statutes." NYCBA Comm. Prof. & Jud. Ethics, Formal Op. No. 1994-1 (1994). A comment to Rule 1.6 states that the rule is subject to exceptions that "prevent substantial harm to important interests, deter wrongdoing by clients, [and] prevent violations of the law[.]" N.Y. Rules of Prof'l Conduct R. 1.6, cmt 6. To our knowledge, no New York court has ruled on the interaction between Rule 1.6 and statutory claims of discrimination by in-house counsel. See, e.g., Keller v. Loews Corp., 894 N.Y.S.2d 376 (1st Dep't 2010) (concerning a discrimination claim by in-house counsel, which was allowed to proceed, and a breach of fiduciary duty counterclaim); but see Wise v. Consol. Edison Co. of New York, 723 N.Y.S.2d 462 (1st Dep't 2001) (holding that a wrongful termination claim by in-house counsel was barred where it would entail disclosure of client confidences); see also Eckhaus v. Alfa-Laval, Inc., 764 F. Supp. 34 (S.D.N.Y. 1991) (holding that a defamation claim by in-house counsel was barred where it would result in disclosure of client confidences); see also United States v. Quest Diagnostics, Inc., 734 F.3d 154,  (2d Cir. 2013) (affirming dismissal of a qui tam action by in-house counsel because the attorney "spill[ed] his guts and freely disclosed client confidences); accord Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, No. 14-CV-6867 (VEC), 2016 WL 1071107, at *1 (S.D.N.Y. Mar. 18, 2016), aff'd, 814 F.3d 132 (2d Cir. 2016) (concerning an attorney's claim of retaliatory breach of contract against his former firm and unsealing the complaint).

However, even if New York law bars in-house counsel from suing an employer, the Supremacy Clause dictates that the suit must be allowed to go forward. Though federal law and New York state law co-exist in the area of employment, state law will be preempted when it frustrates the objectives of Congress. California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 281 (1987) ("[F]ederal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law . . . because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'"); accord Stryker v. Register Pub. Co., 423 F. Supp. 476, 479 (D. Conn. 1976) ("Under the Supremacy Clause of the Constitution, when it comes to a choice between Title VII and a state protective law, Title VII prevails."). In other areas, federal civil rights have been permitted to override state attorney ethics rules. See, e.g., Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 668-70

---

[1] 43 states have adopted Rules of Professional Conduct which contain language identical or very similar to that of Model Rule 1.6(b)(5). Jurisdictional Rules Comparison Charts: Model Rule 1.6, Am. Bar Ass'n (Jan. 2, 2020), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/mrpc_1_6.pdf.

(1985) (dealing with attorney advertising rules and the First Amendment, noting that Ohio rules created "a potential trap for an unwary attorney acting in good faith [which] not only works a significant due process deprivation, but also imposes an intolerable chill upon the exercise of First Amendment rights."). New York's Rule 1.6, if interpreted to prevent an in-house counsel from revealing client confidences essential to her discrimination claims, would act as an obstacle to Haider's vindication of her rights under federal law. See Guerra, 479 U.S. at 281; E.E.O.C. v. Hennepin Cty., 623 F. Supp. 29, 32 (D. Minn. 1985) ("[e]ven though Congress does not explicitly preempt a state law, the state law will be preempted if it would frustrate the scheme established by federal law").

Sealing Haider's initial complaint is an appropriate means to resolve the conflict between upholding an in-house counsel's civil rights and the need to maintain client confidences. See Kachmar, 109 F.3d at 182. Plaintiff respectfully requests that she be permitted to file her complaint under seal pending full briefing on the question of which allegations asserted in Haider's complaint can be made public.

Respectfully,

Debra L. Raskin

dlr/kcr
Enclosures (2)

cc:   Craig Benson
      Littler Mendelson P.C.
      Attorneys for Geller
      CBenson@littler.com

      Michael Hanan
      Gordon Rees Scully Mansukhani, LLP
      Attorneys for Bliss Lawyers
      mhanan@grsm.com

4

1089502 v1